<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

STEVEN KADONSKY,                  :

     Petitioner,            :          Civil Action No. 11-1250 (AET)

        v.                :          **OPINION**

GREG BARKOWSKI, et al.,           :

     Respondents.           :

---

**APPEARANCES:**

Steven Kadonsky, *Pro Se*
807236B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Michael McLaughlin
Somerset County Prosecutor's Office
40 Bridge Street
P.O. Box 3000
Somerville, NJ 08876
Attorney for Respondents

**THOMPSON, District Judge**

    Petitioner, Steven Kadonsky, submitted this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and Respondents submitted an answer to the petition (ECF No. 12), with the available state court record. For the following reasons, the petition will be denied.

## BACKGROUND

The facts set forth by the state court in Petitioner's direct appeal are as follows:

> In February of 1992, as a result of an ongoing narcotics investigation, a search warrant was executed at a warehouse in Piscataway. Property and contraband were found at that location which are used in the indoor cultivation of marijuana. As a result of arrests made that day, detectives discovered an enormous amount of marijuana in a "safehouse", operated by defendant and his employees, where marijuana was vacuum-packed in large plastic jars for re-sale. Detectives also located an overwhelming amount of records and documents, including numerous sets of fictitious identification. These records detailed the large amounts of marijuana, sold in cases at a price of $2,000 per case, the operational expenses of the indoor grow, as well as salaries and Christmas bonuses for its employees. Detectives also found bank accounts, mailbox drops, telephone services, trucking and real estate rentals, and supply store accounts set up under false names and fictitious corporations. Information supplied by co-defendants, as well as this extensive paper trial [sic], confirmed defendant's involvement as Leader of this criminal enterprise.

*State v. Kadonsky,* 288 N.J. Super. 41, 44 (App. Div. 1996).

Petitioner pled guilty to New Jersey's "drug kingpin" statute, *N.J.S.A.* 2C:35-3. The sentencing provision of that statute required the trial court to sentence Petitioner to life imprisonment with a twenty-five year period of parole ineligibility. *See Kadonsky*, 288 N.J. Super. at 43. On February 29, 1996, the Superior Court of New Jersey, Appellate Division ("Appellate Division") found Petitioner's contentions on appeal (concerning the nature of the marijuana trafficking statute, the trial court's decision not to hold a hearing

2

on the warrantless search, and the adequacy of the factual basis at the plea) without merit, and affirmed. *See id.* The New Jersey Supreme Court denied certification on May 23, 1996. *State v. Kadonsky*, 144 N.J. 589 (1996)(Table).

Petitioner's petition for post-conviction relief ("PCR") to correct an illegal sentence was denied by the trial court and the appellate courts, with the New Jersey Supreme Court denying certification on May 26, 1999. *State v. Kadonsky*, 160 N.J. 477 (1999)(Table). A second motion for PCR, concerning counsel's effectiveness, fines, and prosecutorial misconduct was denied by the New Jersey Courts, with the New Jersey Supreme Court denying certification on March 4, 2010. *State v. Kadonsky*, 201 N.J. 440 (2010)(Table).

Having exhausted his state court remedies, Petitioner then filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. In this petition, he asserts the following claims: (1) Petitioner was denied his right to effective assistance of counsel throughout every state of Petitioner's litigation; (2) prosecutorial misconduct when the prosecutor "double crossed" Petitioner by not dismissing charges in exchange for information; (3) due process violation due to excessive fines; (4) unconstitutional sentencing in violation of the Eighth Amendment; (5) due process violation in warrantless search; (6) inadequate factual basis for guilty plea; and

(7) conflict of interest and prosecutorial misconduct. *See* Petition, ¶ 12.

## DISCUSSION

### A.   Section 2254 Cases

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996] AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, --- U.S. ----, ----, 131 S. Ct. 1388, 1398 (2011). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA further limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). If a claim has been adjudicated on the merits in state court proceedings, this Court has "no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v.*

*Matthews*, -- U.S. --, 132 S. Ct. 2148, 2151 (2012) (quoting 28 U.S.C.
§ 2254(d)). However, when "the state court has not reached the merits
of a claim thereafter presented to a federal habeas court, the
deferential standards provided by AEDPA ... do not apply." *Lewis v.
Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Appel v. Horn*, 250 F.3d
203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining
the relevant law clearly established by the Supreme Court. *See
Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established
law "refers to the holdings, as opposed to the dicta, of [the Supreme
Court's] decisions as of the time of the relevant state-court
decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court
must look for "the governing legal principle or principles set forth
by the Supreme Court at the time the state court renders its decision."
*Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent
does not constitute 'clearly established Federal law, as determined
by the Supreme Court,' [and] therefore cannot form the basis for
habeas relief under AEDPA." *Parker*, 132 S. Ct. at 2155 (quoting 28
U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28
U.S.C. § 2254(d)(1), if the state court applies a rule that
"contradicts the governing law set forth in [the Supreme Court's]
cases" or if it "confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the " 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S. Ct. at 785 (quoting Williams at 410). As the Supreme Court explains,

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.... Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 131 S. Ct. at 786 (citations and internal quotation marks omitted).

"This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen*, 131 S. Ct. at

1398 (citations and internal quotation marks omitted). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Id.*

**B.  Petitioner's Habeas Claims Will Be Denied.**

**1.  Ineffective Assistance of Counsel (Ground 1)**

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent

the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

With respect to guilty pleas, "counsel is required to give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'" *Shotts v. Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013)(quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). The Third Circuit has also noted that "'in the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.'" *Id.* (quoting *Lafler v. Cooper*, --- U.S. ----, 132 S. Ct. 1376, 1384, 182 L. Ed.2d 398 (2012)). "If a defendant rejects a plea, he must show that 'but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea' and the resulting sentence would have been lower." *Id.* (quoting *Lafler*, 132 S. Ct. at 1391)(other citations omitted).

Petitioner argues that counsel was ineffective due to dual representation of a co-defendant, for failing to challenge an excessive fine, for failing to move to withdraw the guilty plea, for failure to seek enforcement of the agreement to dismiss charges against him, and for failure to investigate a prosecutorial conflict of interest. *See* Petition, ¶ 12. Petitioner raised these issues in his second PCR motion before the state trial court.

The Appellate Division rejected the arguments for the reasons

expressed in the PCR judge's May 8, 2007 written opinion.  *See State*

*v. Kadonsky*, 2009 WL 3429572 (N.J. App. Div. Oct. 27, 2009) at *5.

In that opinion, the PCR judge cited *Strickland* and found:

> First, Defendant merely alleges that trial counsel
> failed to move to have Defendant withdraw the guilty plea
> after the court sentenced him to a term greater than the
> plea agreement when his attorney had the opportunity to do
> so, trial counsel improperly coached Defendant to lie and
> told him what to say during his plea allocution, trial
> counsel conspired with the court to create waivers that
> Defendant never made and did not exist, that he received
> ineffective assistance of appellate counsel, and
> ine4ffective assistance of post-conviction relief
> counsel.   These contentions made by the defendant prove to
> be nothing more than blatant accusation that are
> complete[ly] lacking in any factual or legal basis.
> Defendant provides little to no support to prove any of
> these alleged actions on the part of any of his attorneys,
> the Somerset County Prosecutor's Office, or the bench.
> Therefore, with regard to the above noted arguments, this
> Court cannot find that Defendant's counsel was ineffective
> under *Strickland* and *Fritz*.
> 
> ***
> 
> Defendant's newest allegations of ineffective
> assistance of counsel due to dual representation must also
> be addressed.   First and foremost, this allegation could
> have, and should have been brought on direct appeal.
> Defendant has been aware of this dual representation for
> many years . . . this is the first time this allegation is
> being brought by Defendant.   As such, this allegation
> should fail under R. 3:22-4.
> 
> However, even decided on the merits, this argument of
> dual representation must also fail. . . . [The state law
> case cited by Petitioner] contemplates dual representation
> between co-defendants *at trial*. . . . . In this case
> however, the Defendant's case did not go to trial.   In
> fact, Defendant knowingly and willfully entered into a plea
> agreement where he would plead guilty for the mutual
> benefit of himself and his co-defendants . . . .   It is
> completely disingenuous for the Defendant to enter into a
> plea agreement in concert with, and for the benefit of, his
> co-defendant . . . and now allege a conflict of interest
> as a result of dual representation . . . .   The defendant

brings forth not a scintilla of evidence as to how this
potential dual representation prejudiced him in the least.
Thus here too, the Defendant's allegations must fail.

(*See* Answer, Respondents' Exhibit Pa-123). Petitioner's

additional allegations concerning ineffective assistance of counsel

were also denied by the PCR judge and the Appellate Division.

Affirming the PCR judge, the Appellate Division reasoned:

> In short, defendant dredges up allegations that are
> unsupported by any competent evidence, which were not
> previously raised and are therefore barred. From our
> thorough review of the PCR record, we conclude that Judge
> Ciccone correctly applied the Strickland/Fritz standard,
> with respect to the claim of ineffective assistance of
> trial, appellate and first PCR counsels. Moreover, we agree
> with her conclusion that defendant failed to meet his
> burden of making a prima facie showing of his attorneys'
> deficiency. *State v. Preciose*, 129 N.J. 451, 462-63, 609
> A.2d 1280 (1992). With respect to allegations of improper
> conduct by defendant's trial attorney and Bissell,
> defendant has also failed to make a showing based on
> competent evidence. Rather, he has presented self-serving,
> uncorroborated allegations.

*Kadonsky*, 2009 WL 3429572 at * 5.

Having carefully reviewed the record, and considering the claims

asserted by Petitioner herein, this Court does not find that trial

or appellate counsel was ineffective to warrant habeas relief. As

stated many times by the PCR court and Appellate Division, Petitioner

clearly understood the plea and consequences, providing an adequate

factual basis. A review of the record shows that Petitioner's trial

and appellate counsel represented him adequately at the plea and

10

sentencing phases.

Petitioner here has not shown that the outcome of the plea would have been different had Petitioner received "competent advice." *Lafler*, 132 S. Ct. at 1384. Petitioner's challenges fail to meet either prong of the *Strickland* test, since counsel's actions were reasonable, and Petitioner failed to show any prejudice.  The state courts' findings were based upon application of the correct *Strickland* standard.  These findings were neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor were they based upon an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on these claims.[1]

**2. Prosecutorial Misconduct (Ground 2)**

Petitioner argues that the prosecutor reneged on the agreement to dismiss the charges against him in exchange for information. Petitioner asserts that there was an *in camera* agreement which was violated, and that the prosecutor "double-crossed" him.  (Petition, ¶ 12).

---

[1]   With respect to Petitioner's claim of ineffective assistance of PCR counsel, such claim must be dismissed pursuant to 28 U.S.C. § 2254(i), because the "ineffectiveness or incompleteness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i).

The Appellate Division, on appeal of Petitioner's second PCR petition, explains the unique facts surrounding Petitioner's assistance in great detail:

In September 1993, on the day of trial, defendant entered a negotiated plea of guilty to: first-degree offense of being a leader or "kingpin" of a narcotics trafficking network, N.J.S.A. 2C:35-3; two counts of second-degree conspiracy to possess marijuana, a controlled dangerous substance (CDS) with intent to distribute, N.J.S.A. 2C:35-5a(1) and -5b(1) and N.J.S.A. 2C:5-2; second-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5a(1) and 5b(10); and fourth-degree possession of marijuana, N.J.S.A. 2C:35-10a(3).

There was an in camera hearing before Judge Michael R. Imbriani. The attorneys for defendant, his brother George Kadonsky and co-defendant Carolyn Czick were present. The then Somerset County Prosecutor, Nicholas Bissell, was also present and agreed that if defendant cooperated with law enforcement, the sentence recommendation would be reduced. The amount of the reduction would depend on the extent of defendant's cooperation. Specifically, defendant was to provide information concerning the narcotics organization of co-defendant Howard Weinthal, which was believed to be a nationwide network. Defendant agreed that he would be given consideration on his sentence each time the Prosecutor's Office obtained information sufficient to obtain a warrant to search for and seize large quantities of marijuana or make arrests of individuals involved in narcotics trafficking. That same day, defendant and George Kadonsky entered pleas of guilty before Judge Imbriani, who accepted the pleas, but postponed defendant's sentence for several months.

During a six-month period, the State made several seizures of large quantities of marijuana based on tips and information given by defendant to the Prosecutor's Office. Weinthal's girlfriend, Kimberly Cruson, and three undocumented aliens from Mexico, were charged in connection with one of the seizures. Linda Taylor and Joseph William were also arrested following an extensive

12

investigation by the Somerset County Prosecutor into defendant's cooperation.

Before the sentencing hearing, Assistant Prosecutor Head-Melitto wrote a letter to defendant's counsel, outlining defendant's cooperation, which led to nine seizures of 3,160 pounds of marijuana, $509,945 in cash, and the arrest of three individuals involved in the transportation of the marijuana. The letter stated:

> At the time of his plea on September 8, 1993[,] defendant agreed to the following cooperation for the listed sentence consideration:
>
> Within 30 days of the plea and thereafter:
>  500-1,000 pounds of marijuana
>  No Credit
>
>  1,000 pounds of marijuana
>  15 years with a 5 year stipulation
>
>  500 pounds of marijuana
>  10 years with a 3 1/3 year stipulation
>
>  500 pounds of marijuana
>  10 years flat
>
>  500 pounds of marijuana
>  7 years flat
>
> You will recall that the State insisted that any cooperation include arrests of individuals involved in narcotics trafficking above the level of mere transportation, or so-called "mules."
>
> As you can see, defendant's cooperation has not precisely coincided with the terms that he proffered and agreed to in Court. In some cases he has exceeded the agreement and in other areas he has fallen short.

At the sentencing hearing, however, the State sought the maximum statutory penalty. According to the Prosecutor's Office, it conducted investigations after each seizure and maintained ongoing surveillance of

defendant and his associates. During the investigations, Taylor and Williams were interviewed. They revealed that the information that defendant had been providing to the Prosecutor's Office was false. Law enforcement officers concluded that defendant had actually orchestrated a scheme whereby marijuana was to be placed in storage by individuals using various disguises and fictitious identification. Defendant would then provide the Prosecutor's Office with "tips" regarding the location of drugs in order to receive consideration on his sentence. According to the Prosecutor, these false "tips" caused the arrest of Cruson and the three men from Mexico. No other arrests were made as a result of defendant's tips.

As a result of defendant's false cooperation, the Somerset County grand jury returned another indictment against defendant alleging distribution of marijuana to the Prosecutor's Office, as part of defendant's fraudulent scheme. Defendant also pleaded guilty to this charge. On July 1, 1994, Judge Robert Guterl merged the conspiracy, possession and distribution convictions and sentenced defendant to concurrent seven-year terms. On the kingpin conviction, the judge imposed a statutorily mandated life term with a twenty-five year parole disqualifier to run concurrent with the other sentences. Defendant was fined $500,000. We affirmed on direct appeal.

*Kadonsky*, 2009 WL 3429572 at *1-2 (internal footnotes omitted). The PCR judge rejected Petitioner's prosecutorial misconduct claim.

A review of the record reveals no misconduct; more importantly, by accepting the plea, Petitioner waived his rights to assert the issues of prosecutorial misconduct. *See Washington v. Sobina*, 475 F.3d 162 (3d Cir. 2007) (holding that a defendant's unconditional, knowing, and voluntary guilty plea acts as a waiver of non-jurisdictional defects, including the waiver of pre-trial claims that police illegally seized evidence); *see also United States v.*

*Shusterman*, 258 Fed. App'x 403, 404 (3d Cir. 2007) ("Shusterman's claims of prosecutorial misconduct at trial are also barred by his guilty pleas.")(citing *Washington*, 475 F.3d at 162). As such, habeas relief is not warranted on this claim.

### 3. Excessive Fines and Sentence (Grounds 3 and 4)

Petitioner argues that he has a right to be free from excessive fines imposed at his sentencing, and that the statute under which he was sentenced, *N.J.S.A.* 2C:35-3 "was not intended to encompass marijuana trafficking of the sort at issue herein" and "violates the principle of proportionality." Petition, ¶ 12. These issues have been litigated through the state courts and found to be without merit. *See Kadonsky*, 288 N.J. Super. at 45.

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *Yorio v. New Jersey*, 2012 WL 3133948 (D.N.J. July 31, 2012) at *3; *see also* 28 U.S.C. § 2254(a).

Here, Petitioner's challenge to the state court's sentencing fine would not be reviewable in this Court; he has presented no cogent argument why his sentence is unconstitutional and he is not entitled to relief on this ground.

As to his argument that New Jersey's "drug kingpin" statute mandatory sentencing provision did not mean to encompass marijuana in its realm of possible drug convictions, the Appellate Division found that argument without merit, noting that marijuana is a "Schedule I" drug encompassed within the statute. *See Kadonsky,* 288 N.J. Super. at 44; *N.J.S.A.* 24:21-5; *N.J.S.A.* 2C:35-3. Petitioner is not entitled to habeas relief.

### 4. Warrantless Search (Ground 5)

Petitioner argues that a warrantless search of his property was conducted, and that he was not afforded a hearing on his motion to suppress. The Appellate Division reviewed this claim on direct appeal and found:

> A hearing on defendant's motion to suppress was not afforded. R. 3:5-7(c) provides that a hearing on a motion to suppress need be held only if material facts are disputed. Apart from the conclusory assertion that an illegal search had occurred and that the evidence seized should be suppressed, defendant put no facts on record to support his assertion. It is not disputed that defendant's wife, Carol Kadonsky, gave permission for their house to be searched. As indicated on the consent form, Mrs. Kadonsky was fully advised of her rights to refuse permission in the absence of a search warrant. Nevertheless, she signed the consent form. She did not contend there was any legal deficiency in her consent to the search by executing an appropriate affidavit or

certification in support of her husband's motion to
suppress. In the absence of factual allegations to support
the claim that the search and seizure were illegal, a
hearing was not required and the motion to suppress was
properly denied.

*Kadonsky*, 288 N.J. Super. at 45-46.

Petitioner's allegations of an illegal search are not supported
by the record. The record indicates that Petitioner's wife gave
permission for the house to be searched. She signed a consent form
advising her of her right to refuse permission for the search, and
has not contended that there was any legal deficiency in her granting
of consent. Thus, Petitioner is not entitled to relief on this claim.

**5. Basis for Guilty Plea (Ground 6)**

Petitioner argues that there was not a sufficient basis for the
trial court to accept his guilty plea (Petition, ¶ 12). The Appellate
Division examined this claim on direct appeal and painstakingly
detailed the breadth of Petitioner's factual admissions on the
record:

> When defendant entered his guilty plea pursuant to the
> plea bargain agreement, he executed the required form
> admitting that he was a leader of a narcotics trafficking
> network. Beyond that, the court elicited from defendant
> facts sufficient to form a basis for the acceptance of his
> guilty plea. Defendant now denies that he ever admitted to
> being a leader or that he occupied the role of a high-level
> position within the narcotics trafficking network in
> question.
>
> Defendant admitted to working with David Weinstein,
> his brother George Kadonsky, a "Mr. Miller", Deborah
> Ysagguire, and other employees of the operation.

He said: "I helped Dave Weinstein put together the operation ... [for] growing marijuana for sale."

Defendant admitted he "cooperated with Mr. Weinstein in, in setting up the facility." Defendant "helped design the operations ... [and d]esign the facility, design how everything should work with the electrical and the plumbing and everything."

He admitted to renting "a facility in Hillsborough for the purpose of perpetuating this particular organization." The following colloquy also took place:

PROSECUTOR: ... Mr. Kadonsky, was Mr. Miller subordinate to you in status in this organization? Was he a worker in this particular warehouse?

MR. KADONSKY: Mr. Miller was a worker. The direct chain of command was all the employees were supervised and got their instructions from Mr. Weinstein. They would have taken instructions from me—okay. Yes.

THE COURT: Yes what?

MR. KADONSKY: My brother would take instructions from me. He would clear things with me.

....

THE COURT: And would you share in the profits if there were any with David Weinstein?

MR. KADONSKY: I was to share in the profits if there are [sic] were anything, yes.

THE COURT: Was there anyone that would share in the profits between you and Mr. Weinstein that you're aware of?

MR. KADONSKY: There may have been. I don't know.

THE COURT: That you're aware of?

MR. KADONSKY: No.

THE COURT: So as far as you know, the only people who shared in the profits were you and David Weinstein?

MR. KADONSKY: Yes.

Defendant was asked: "Mr. Kadonsky, would you agree that the group of people constituting people such as Mr. Miller, Miss Ysagguire, constituted a structured organization or system engaged in the manufacture and distribution of illegal drugs?" He answered, "Yes."

Defendant was asked: "There is no question that this organization was engaged in the manufacture or distribution of marijuana?" He answered, "Yes."

Defendant was asked: "And was the purpose of the growing of the marijuana to accumulate sufficient quantity to distribute it to others? Was that your intent?" He answered, "Yes."

Significantly, the following question and answer also took place:

THE COURT: Let me just say to you Mr. Kadonsky, that the statute, that the case [*State v. Alexander*, 264 N.J. Super. 102, 624 A.2d 48 (App.Div.1993), *aff'd*, 136 N.J. 563, 643 A.2d 996 (1994)] says an upper echelon member is defined as someone who stands on an upper level of the chain of command of a drug trafficking network exercising command authority over members of that organization whose status is subordinate to his. An upper level is a level which is superior to street level distributors and to their immediate supervisors and suppliers. That's what the statute, the case says.

MR. KADONSKY: I was involved in a conspiracy with David Weinstein where he was in—he managed and operated the facility, so from that standpoint he would ask me questions from time to time as to the operations, so from that standpoint, yes.

In light of such factual admissions, defendant cannot now argue that there was an inadequate basis for the acceptance of his plea and that the conspiracy with which he was charged was not consummated. The factual basis for the acceptance of the plea is amply contained in the excerpts from the transcripts of court proceedings set forth above. As for the conspiracy charge, the factual admissions by defendant as above noted are replete with

overt acts.

*Kadonsky*, 288 N.J. Super at 46-48.

The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (a guilty plea is invalid only if it is not the result of the defendant's knowing and voluntary waiver of his/her rights or if the offered plea has no factual basis). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial[,]" including the defendant's privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. *Boykin*, 395 U.S. at 243. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). Relevant circumstances include the petitioner's statements during the plea colloquy:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

In this case, the record provides a "formidable barrier" against Petitioner's arguments here in his habeas petition. It is clear that Petitioner thoughtfully considered the trial judge's questions and understood to what he was pleading guilty. Petitioner has not demonstrated that the state courts' acceptance of his plea was contrary to, or involved an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to relief on this claim.

### 6. Conflict of Interest (Ground 7)

Petitioner argues that a conflict of interest existed when the Somerset County Prosecutor's Office notified defense counsel that they (his counsel) were implicated in the same crimes as Petitioner was charged. (Petition, ¶ 12). The Appellate Division explained the facts as follows:

> Defendant alleged that his attorneys were under investigation by the Somerset County Prosecutor's Office, the Federal Bureau of Investigation (FBI) and the Internal Revenue Service (IRS) as co-conspirators in the illegal activities of defendant. Specifically, defendant alleged that Bissell entered into an illegal agreement with defendant with the help of defendant's attorneys so that Bissell would receive cash from defendant. The investigation into the Weinthal organization was merely a front used to facilitate cash payments to Bissell. In exchange for the cash payments, Bissell would dismiss the charges. Defendant alleged that Bissell, who committed suicide in November 1996, along with the FBI and the IRS, commenced an investigation of the law firm representing

21

defendant.

As stated above, Judge Ciccone found that these
allegations by defendant were uncorroborated. Other than
defendant's own allegation, there was a reference to a
conversation between Williams and an investigator.
Williams was in jail while awaiting trial on unrelated
narcotics charges. Allegedly, Williams informed the
Somerset County Prosecutor's Office that defendant's
attorneys "were involved in the orchestration of the
seizures of marijuana and cash" by Bissell. Defendant also
submitted a certification by Taylor stating her
supposition that the Somerset County Prosecutor was
investigating defendant's attorneys.

Defendant's attorneys denied being investigated by
the FBI, IRS or the Somerset County Prosecutor and denied
the alleged conspiracy to provide Bissell with cash. This
was corroborated by investigations conducted by the
Somerset County Prosecutor's Office, long after Bissell's
death, as well as statements by Assistant Prosecutor
Head-Melillo and Deputy Chief of Detectives Norman Cullen.

The judge rejected defendant's allegations, finding
that:

> [d]efendant's mere allegations and the
> affidavits of Williams and Taylor are not enough
> to establish that [d]efendant's attorneys were
> under investigation. Defendant fails to put
> forth any substantive evidence indicating that,
> indeed, there was an investigation of his
> attorneys. Moreover, the State strongly denies
> the allegations. As such, this contention must
> fail under *Strickland* and *Fritz*.

*Kadonsky*, 2009 WL 3429572 at *3-4 (N.J. App. Div. Oct. 27,

2009)(internal citations and footnotes omitted). The Appellate

Division ultimately found: "With respect to allegations of improper

conduct by defendant's trial attorney and Bissell, defendant has also

failed to make a showing based on competent evidence. Rather, he has presented self-serving, uncorroborated allegations." *Id.* at *5.

Petitioner's ineffective assistance of counsel claims regarding his plea have been rejected and his guilty plea deemed adequate, *see supra*, and this Court concludes that this issue is a state court factual finding, examined thoroughly in the state courts, which does not merit federal habeas relief. *See Parker v. Matthews*, -- U.S. --, 132 S. Ct. 2148, 2151 (2012) (finding when a state court has adjudicated a petitioner's federal claim on the merits, a district court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'") (quoting 28 U.S.C. § 2254(d)). Petitioner has not pointed to any evidence suggesting that the state courts' determination of facts is unreasonable.

## C.   Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## CONCLUSION

For the reasons set forth above, the petition is denied. No certificate of appealability will issue. An appropriate order follows.


           */s/ Anne E. Thompson*
           ANNE E. THOMPSON
           United States District Judge
Dated: 11/20/13